IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

DANIEL R. HORTON, )
)
          Plaintiff, )   TC-MD 150399D
)
      v. )
)
DEPARTMENT OF REVENUE, )
State of Oregon, )
)
          Defendant. )   **FINAL DECISION**

This Final Decision incorporates without change the court's Decision, entered

May 24, 2016. The court did not receive a statement of costs and disbursements within 14 days

after its Decision was entered. *See* TCR-MD 16 C(1).

Plaintiff appeals Defendant's Notice of Deficiency Assessment dated June 16, 2015, for

the 2011 tax year. A trial was held in the Oregon Tax Courtroom on January 12, 2016, in Salem,

Oregon. Rory B.Tosh (Tosh), a certified public accountant, appeared on behalf of Plaintiff.

Plaintiff, Daniel R. Horton (Horton) testified on his own behalf. Peggy Ellis (Ellis) appeared and

testified on behalf of Defendant. Plaintiff's Exhibits 1 through 7 were received without

objection. Defendant's Exhibits A through M were received without objection.

I. STATEMENT OF FACTS

A. *Plaintiffs' Evidence*

Horton testified that he was born and raised on a ranch until he left for college. For the

next several years he worked on farms during his summer breaks. After graduating, Horton

worked as an architectural intern for approximately nine years until 1989 when he started his

own architectural firm. Initially, business was "lean" but after several years he developed a

successful architectural practice.

In the late 1990s Horton purchased 40 acres of pasture ground to start a ranch. He spent approximately one year cleaning it up and purchasing equipment. Horton began harvesting hay for sale. In July and August 2002, Horton engaged Western Laboratories, Inc. to perform a "plant analysis report" on his alfalfa and grass hay. (Pft's Ex 6 at 1, 3.) In September 2002, Horton hired Western Laboratories Inc. to perform a commercial soil report. (Pft's Ex 6 at 2.) In September 2003, Horton engaged Oregon State University to perform an "Endophyte Toxin Analysis" on his fescue grass. (Ptf's Ex 6 at 4.) Horton continued to grow hay for his own animals, but stopped production for sale because he was losing too much money on the commodity.

In 2002, Horton decided to start a horse breeding business with his uncle who had previous experience in the industry. Horton found the first few years difficult as they had trouble getting mares to bear foals. Sometime in 2005 or 2006, they had some success in breeding. Soon thereafter, the uncle died in a car accident and Horton decided to stop the horse breeding business. Horton found that he was not able to sell the horses or even give them away, so he kept them on the ranch. Horton continued to deduct expenses for the horses even though he had decided not to pursue the business.

In 2006, Horton bought about 80 acres of land with a residence. In 2008, Horton purchased 10 registered Angus cows with calves, consisting of seven heifers and three bulls. After the winter of 2008, he sold the three bulls for a total of $6,000, and kept the heifers to grow the herd. Horton continued to use hay grown on the ranch to feed the herd and his horses, but also supplemented with commercially purchased hay.

Horton reported gross receipts from his work as an architect in 2011 at $242,240. (Def's Ex B at 3.) In the same year he reported gross receipts from farming at $6,000. (*Id*. at 4.)

Horton reported his farm expenses for the year as follows:

| ITEM | AMOUNT |
|------|--------|
| Car & Truck | $3,402 |
| Depreciation | $13,074 |
| Feed | $9,503 |
| Insurance | $2,450 |
| Mortgage Int. | $9,580 |
| Rent/Lease | $5,050 |
| Repair/Main. | $2,726 |
| Taxes | $2,166 |
| Veterinary | $294 |
| Irrigation | $957 |
| Dues | $230 |
| Registrations | $182 |
| **Total** | **$49,614** |

Horton reported a farm loss of $43,614 for the 2011 tax year. (*Id.*) He did not maintain records to indicate the cost allocation of the horses and cattle. Horton did not keep records to track the costs associated with each animal. He believes he will know when the business becomes profitable and testified that he made a profit from the ranch in 2014.

Horton testified that he derived personal pleasure from operating the ranch because it was part of his "family heritage" and gave him a sense of accomplishment. He estimates that he has spent an average of 35 hours per week on ranch activities while working 40 hours per week as an architect.

B.    *Defendant's Evidence*

Ellis testified she is a tax auditor for Defendant and participated in the audit of Plaintiff's ranch. Ellis noted that Plaintiff has reported large Schedule F farm losses each year from 1998 through 2013, and a small profit in 2014 as follows[1]:

/ / /

/ / /

---

[1] This table is from Def's Ex C at 1.

| Year | Income | Expense | Profit/Loss |
|------|--------|---------|-------------|
| 1998 | $3,967 | $11,003 | ($7,036) |
| 1999 | $950 | $5,626 | ($4,676) |
| 2000 | $950 | $7,909 | ($6,959) |
| 2001 | $889 | $16,750 | ($15,861) |
| 2002 | $1,950 | $28,264 | ($26,314) |
| 2003 | $2,750 | $22,234 | ($19,484) |
| 2004 | $3,250 | $35,545 | ($32,295) |
| 2005 | $2,700 | $27,148 | ($24,448) |
| 2006 | $2,100 | $15,930 | ($13,830) |
| 2007 | $2,500 | $26,414 | ($23,914) |
| 2008 | $550 | $34,857 | ($34,307) |
| 2009 | $0 | $26,139 | ($26,139) |
| 2010 | $4,250 | $44,783 | ($40,533) |
| 2011 | $6,000 | $49,614 | ($43,614) |
| 2012 | $8,000 | $67,981 | ($59,981) |
| 2013 | $16,000 | $64,470 | ($48,470) |
| 2014 | $36,150 | $31,811 | $4,339 |
| Totals | $92,956 | $516,478 | ($423,522) |

Ellis testified that the income and expense history does not show a typical business pattern of decreasing expenses and increasing income. She testified that Plaintiff's profit in 2014 was the result of him eliminating deductions for car and truck expense, reducing depreciation, and reallocating mortgage interest from the farm to his mortgage interest deduction on Schedule A.

Ellis testified that Plaintiff had significant income from his architecture firm to fund operations of the farm. Plaintiff's adjusted gross income (excluding Schedule F losses) from 1998 through 2014 totaled $759,523, during which time he had Schedule F losses of $423,522. (Def's Ex D at 1.) Ellis testified that, as a result of the Schedule F losses, Plaintiff greatly reduced his taxable income.

Ellis testified that Plaintiff lived on one of his ranches and derived personal pleasure from ranch activity. Ellis testified that Plaintiff kept horses for years after determining they were no longer part of a viable business and, instead of selling or disposing of them, he maintained those

animals and deducted expenses related to their care. Ellis testified that Plaintiff did not keep sufficient records to ascertain the actual cost of the cattle so he could make a determination of profitability.

## II. ANALYSIS

The issue in this case is whether Plaintiff's ranch was a business, for which deductions are allowed under Internal Revenue Code (IRC) section 162, or an activity not engaged in for profit, under IRC section 183.

A.    *Burden of Proof*

In analyzing Oregon income tax cases, the court starts with several general guidelines. First, the court is guided by the intent of the legislature to make Oregon's personal income tax law identical in effect to the federal Internal Revenue Code (IRC) for the purpose of determining taxable income of individuals, wherever possible. ORS 316.007.[2] Second, in cases before the Tax Court, the party seeking affirmative relief bears the burden of proof and must establish his or her case by a "preponderance of the evidence." ORS 305.427. Third, allowable deductions from taxable income are a "matter of legislative grace" and the burden of proof (substantiation) is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992).

B.    *Deductibility of Farm Expenses*

Under IRC section 162(a), a deduction is allowed for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" The code and regulations preclude deductions "for expenses incurred in connection with activities which are not engaged in for profit[,]" except as provided in IRC section 183. Treas Reg §

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

1.183-2(a).  "[D]eductions are not allowable under section 162 or 212 for activities which are carried on primarily as a sport, hobby, or for recreation."  *Id.*  If the activity is not engaged in for profit, expenses may be deducted under IRC section 183 only to the extent of any profits. *Gallo v. Dept. of Rev.*, TC-MD 011022F, WL 21675927 at *3 (July 8, 2003).

> "The determination whether an activity is engaged in for profit is to be made by reference to objective standards, taking into account all of the facts and circumstances of each case.  Although a reasonable expectation of profit is not required, the facts and circumstances must indicate that the taxpayer entered into the activity, or continued the activity, with the objective of making a profit.  In determining whether such an objective exists, it may be sufficient that there is a small chance of making a large profit. * * * In determining whether an activity is engaged in for profit, greater weight is given to objective facts than to the taxpayer's mere statement of his intent."

Treas Reg § 1.183-2(a); *see Comm'r v. Groetzinger*, 480 US 23, 35, 107 S Ct 980, 94 L Ed 2d 25 (1987).

"In determining whether an activity is engaged in for profit, all facts and circumstances with respect to the activity are to be taken into account.  No one factor is determinative in making this determination."  Treas Reg § 1.183-2(b).  The nonexhaustive list of factors are: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort the taxpayer expends; (4) the expectation that the assets may appreciate in value; (5) the taxpayer's success in carrying on similar or dissimilar activities; (6) the history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation.  *Id*.

1.    *Manner in which taxpayer carries on activity*

"The fact that the taxpayer carries on the activity in a businesslike manner * * * may indicate that the activity is engaged in for profit."  Treas Reg § 1.183-2(b)(1).  Under that factor, the court considers "(1) whether the taxpayer maintained complete and accurate books and

records for the activity, (2) whether the taxpayer conducted the activity in a manner substantially similar to those of comparable activities that were profitable, and (3) whether the taxpayer changed operating procedures, adopted new techniques, or abandoned unprofitable methods in a manner consistent with an intent to improve profitability." *Giles v. Comm'r*, 89 TCM (CCH) 770 (2005), 2005 WL 375462 at \*9 (US Tax Ct) (citing *Engdahl v. Comm'r*, 72 TC 659, 666-67 (1979); Treas Reg § 1.183-2(b)(1)). "A written business plan is not required if the 'business plan was evidenced by \* \* \* actions.' " *Betts v. Comm'r*, 100 TCM (CCH) 67 (2010), 2010 WL 2990300 at \*6 (US Tax Ct) (quoting *Phillips v. Comm'r*, 73 TCM (CCH) 2296 (1997), 1997 WL 105015 at \*6 (US Tax Ct).

Horton did not create a business plan and, instead, relied on his own intuition to determine profitability. Horton argues that he altered his business activity in response to farm losses as shown by his changes from growing hay, to breeding horses, and finally to raising cattle. Although the lack of a written business plan is not conclusive, Horton's successive business changes do not necessarily show his intent to make a profit. Horton kept no financial records with which he could ascertain the expenses of each animal or the amounts needed to sell the animals to create profitability. That is important because Plaintiff sustained year after year losses and there was no evidence that the price of cattle varied so much as to provide for the possibility of a very large short-term profit to make up for prior losses. Plaintiff sold some cattle: $6,000 in 2011; $8,000 in 2012; $16,000 in 2013 and $36,150 in 2014. Yet, despite those sales, there were no records and no evidence presented to show whether those sales represented a true profit. Horton's expenses increased from 2011 through 2013 corresponding to an increased number of animals on the ranch. The decrease in expenses in 2014 is based on Horton's decision forgo claiming certain expenses on his return. That makes any conclusion of increasing

profitability suspect. The court finds it is impossible to tell if Horton's ranch will ever be profitable given his lack of records. Horton also kept deducting costs for his horses after he had abandoned that activity as a source of business. Overall, the manner in which the business was conducted weighs against Plaintiff.

2. *Expertise of taxpayers or their advisors*

"The main inquiry is whether [Plaintiffs'] received advice from the experts as to the accepted principles and economics of profitably running a business * * *." *Betts*, 2010 WL 2990300 at *8 (citations omitted).

Horton persuasively testified that he has years of experience on a ranch that imported a level of expertise. Horton utilized the assistance of experts who tested his soil and hay. He relied on his uncle who had considerable experience in breeding horses. On the other hand, absent from the testimony was any expertise in the business side of ranching. Taking care of animals is not the same as running a profitable ranch. Horton did not demonstrate that he had expertise at running a ranch or that he sought out experts to assist him in making the cattle breeding operations profitable. That factor is, at best, neutral.

3. *Time and effort expended*

Horton testified that he spent about 40 hours per week working as an architect and 36 hours per week working on the ranch. Although the hours worked for each activity are almost the same, the return on investment could not be more stark. In 2011, Horton's gross receipts from architecture were more than 40 times his gross receipts from ranching. Horton's expense for the two activities was close to the same for both, resulting in a large profit from architecture and a large loss from ranching. Although the amount of time spent ranching was not insignificant, the sustained effort in ranching with year after year losses are only understandable

in light of the personal or recreational aspects of the ranch activity. That factor weighs against Plaintiff.

4. *Expectation that assets may increase in value*

There are two assets for which Plaintiff may have expected an increase in value: the real properties and the cattle. Under the regulations, holding land with the intent to profit from an increase in its value may be a separate activity than the farm activity. There was no evidence presented to show that the cattle themselves would appreciate in value.

"Where land is purchased or held primarily with the intent to profit from increase in its value, and the taxpayer also engages in farming on such land, the farming and the holding of the land will ordinarily be considered a single activity only if the farming activity reduces the net cost of carrying the land for its appreciation in value." Treas Reg § 1.183-1(d)(1).

"Farming and holding land will be considered a single activity only 'if the income derived from farming exceeds the deductions attributable to the farming activity which are not directly attributable to the holding of the land.' " *Betts*, 2010 WL 2990300 at \*11 (citing Treas Reg § 1.183-1(d)(1)). Plaintiff did not demonstrate that the ranch reduced the costs of holding the land for appreciation. In fact, Plaintiff's deductions taken for the ranch far exceeded its income from holding of the properties. That factor weighs against Plaintiff.

5. *Success in carrying on similar or dissimilar activities*

"[A] taxpayer's previous success in similar activities may show that the taxpayer has a profit objective even though the current activity is presently unprofitable. A taxpayer's success in other, unrelated activities also may indicate a profit objective." *Storey v. Comm'r*, 103 TCM (CCH) 1631 (2012), 2012 WL 1409273 at \*11 (US Tax Ct) (citations omitted). No evidence was presented that Horton has been successful in similar farm activities. Plaintiff is a very

successful architect and his testimony about going through some "lean years" was persuasive. However, the overriding motivation for ranching based on Horton's testimony is the lifestyle rather than to ranch profitably. That factor weighs against Plaintiff.

6. *History of income or losses*

"[W]here losses continue to be sustained beyond the period which customarily is necessary to bring the operation to profitable status such continued losses, if not explainable, * * * may be indicative that the activity is not being engaged in for profit. If losses are sustained because of unforeseen or fortuitous circumstances which are beyond the control of the taxpayer, * * * such losses would not be an indication that the activity is not engaged in for profit."

Treas Reg § 1.183-2(b)(6).

The evidence shows a 16-year period of steady farm losses with generally increasing rather than decreasing expenses. Horton argues that he turned from losses to profitability in 2014. However, Horton's contention of a "turnaround" in 2014 is also not supported by the evidence. Although he did have an increase in gross receipts, he did not show a trend toward profitability by reducing expenses, but, rather, he reallocated or stopped deducting expenses so as to appear profitable.

Plaintiff's losses in excess of $400,000 over a 16-year period paint a very clear picture. "While a person may start out with a bona fide expectation of profit, even if it is unreasonable, there is a time when, in light of the recurring losses, the bona fides of that expectation must cease." *Prieto v. Commm'r*, 82 TCM (CCH) 716 (2001), 2001 WL 1196201 at * 8 (US Tax Ct). That factor weighs against Plaintiff.

7. *Amount of occasional profits earned*

"An occasional small profit from an activity generating large losses, or from an activity in which the taxpayer has made a large investment, would not generally be determinative that the activity is engaged in for profit. However, substantial profit, though only occasional, would

generally be indicative that an activity is engaged in for profit, where the investment or losses are comparatively small." Treas Reg § 1.183-2(b)(7).

Horton's losses were not small and his assertion of profitability in 2014 was not persuasive. Moreover, there was no testimony that his cattle activity would ever produce even a periodic substantial profit to offset a long history of losses. That factor weighs against Plaintiff.

8. *Financial status of the taxpayers*

"Substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit especially if there are personal or recreational elements involved." Treas Reg § 1.183-2(b)(8).

Horton earned significant income from his profession as an architect and paid significantly less tax as a result of his farm losses. If it were not for that professional income, Horton would have been unable to sustain his ranch activity. For the period 1998 through 2014, Horton's adjusted gross income was reduced by over $423,000. Horton benefitted substantially from his Schedule F losses. Thus, there was substantial income from a source other than the farm activity, generating substantial tax benefits, with an element of personal pleasure. That factor decidedly weighs against Plaintiff.

9. *Elements of personal pleasure or recreation*

"The presence of personal motives in carrying on of an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved." Treas Reg § 1.183-2(b)(9). Plaintiff testified that the ranch activity was hard work while also admitting it had an element of personal pleasure. Horton's testimony of family heritage and a sense of accomplishment appear to be the overriding motivation for the

continuation of the ranch activity, instead of a profit motive. Although there is nothing wrong with Horton's lifestyle choice, he is not allowed under the tax code to deduct the excess losses against his current income. That factor weighs against Plaintiff.

### III. CONCLUSION

After careful consideration, the court concludes that Plaintiff did not operate his ranch properties with the requisite profit objective during the 2011 tax year. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's farm deductions for the 2011 tax year should be disallowed to the extent his losses exceeded his net farm income.

Dated this ___ day of June 2016.


RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on June 14, 2016.*